*187 OPINION.
Smith :
The question at issue in this case is the actual cash value, for the purpose of computing invested capital, of the limestone and shale deposits paid in to the petitioner corporation in exchange for $1,200,000 par value of its common capital stock. It is the contention of the petitioner that such actual cash value was $1,200,000. The respondent has allowed an actual cash value for the property of only $25,000.
The limestone and shale deposits paid in to the corporation were acquired by H. J. Paxton at a cost of $25,000 plus a certain amount not shown by the record for expenses paid in determining the value of the deposits. He entered into an agreement with J. B. Ford and associates that if they would repay him nine-tenths of the cost of the property and build a cement mill, for which they should receive preferred stock and bonds of the corporation, and give him one-tenth of the common capital stock of such corporation, he would turn the lands over to the corporation. This agreement was acceptable to Ford and his associates. Paxton believed that the limestone deposit would last for a period of at least 50 or 60 years for the operation of a large mill and Ford testified that with the mill that was built in 1907 the deposit would probably last 100 years. Paxton estimated that the deposit contained 50,000,000 tons of limestone. Ford was a little more conservative and estimated that the quarry-able content of the limestone deposit was approximately 40,000,000 tons. For purposes of the organization of the corporation he estimated the value of the deposits at $1,200,000. When asked as to the basis of his estimate he replied:
A. We arrived at that figure in tills way: That Mr. Paxton at 1hat time was very anxious to erect a cement plant and it was largely through his solid- *188 tation to Mr. Berry that the matter came to me that Mr. Paxton wanted to build a cement plant, and he wanted the few of us at that time to go in with Mr. Paxton. Mr. Paxton had seen a few other people at that time about the proposition, and probably would have put the proposition over, as he was pretty anxious to build the mill.
However, after looking into the matter for some time, and knowing at that time that the value of that proposition lay in the amount of limestone, which I knew was there, and knowing about the harbor that we had there, and knowing the low cost of fixing up that harbor, which had been used previously and would only require some dredging, and the market condition I thought the best way to do to get at the value of the property would be to value it on what might be called a royalty basis. I have seen that basis used in a number [of] plant [s] where they had had anywhere from five feet to twenty-two feet, and found that the geologists give an average depth of the limestone in the United States, now in use for cement purposes at something like 22 feet, and they usually establish the value of the stone on a royalty basis. These royalties ran from two cents to five cents a ton, and I have been offered, in some places a price on that basis, and it was on the royalty basis that I fixed the value on that limestone at $1,200,000; that is as the value of the property.
Q. You had before you the suggestion of Mr. Brown ?
A. I had before me the suggestion of Mr. Brown, making it 5 cents a ton, which made something like $15,000 an acre on a certain depth which he took.
Q. Yes.
A. And I made my computation on the basis of three cents which was the average of the rates that I had [paid] for the price of limestone lands.
Q. And you arrived at the value by using the index for limestone properties?
A. X did.
Q. Did you have anything in mind as to a possible profit that you would have to make on the cement manufactured out of that limestone?
A. Yes, sir.
Q. What was that?
A. We felt that we would have to make ten cents a barrel on the cement to come out.
Upon the basis of operating results the petitioner has had a certified public accountant prepare elaborate tables as to the value of the deposit upon the basis of Hoskold’s tables. The computations are made upon the basis that in 1907 there were 42,417,600 tons of quarryable limestone in the deposit and that the deposit would last for a period of 40, 50, 60, or 70 years. It is also assumed that 8 per cent is the fair rate for remuneration of capital invested and that 4 per cent is the proper discount figure to be used. It is also figured that inasmuch as Ford estimated that the company could calculate on a profit of 10 cents per barrel of manufactured cement, and that 1 ton of limestone would produce approximately 3 barrels of cement, the company should compute a profit of 30 cents per ton upon the manufacture of the limestone into cement.
We are of the opinion that the basis for a value of 30 cents per ton for the limestone deposit in 1907 is not warranted by any evidence given by Ford. Ford testified that in purchasing limestone upon the royalty basis a fair royalty was from 2 to 5 cents a ton and that *189 be had figured that 3 cents was the average of the rates that he had paid for limestone lands. He also figured that they would have to calculate on a profit of 10 cents per barrel to come out whole. It seems to us that this is far from saying that the -actual cash value of the limestone in place in 1907 is to be computed upon the basis advanced by the petitioner. We can not determine how much of the manufacturing profit is to be attributed to skill in management and how much to the raw materials.
We think that the actual cash value of the limestone and shale deposits in 1907 is best determined from the following factors: That there were approximately 40,000,000 tons of limestone in place; that if the company were acquiring the deposit upon a royalty basis 3 cents per ton payable annually upon the tonnage mined during the year was a fair royalty price; that the deposit would last 60 years. In our opinion the evidence does not warrant a finding that the actual cash value of the deposits which Paxton transferred to the corporation for $120,000 par value of common stock plus $22,500 cash was in excess of $237,600, and we think that this amount should be used as the value of the deposits in the computation of invested capital.
Reviewed by the Board.

Judgment will be entered on 15 days’ notice, under Rule 50.

Lansdon and Teussbll dissent.